**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MICHAEL RILEY D.,[1]** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **No. 3:20-CV-907-MAB[2]** |
| ) | |
| **COMMISSIONER OF SOCIAL** ) | |
| **SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM AND ORDER</u>

In accordance with 42 U.S.C. § 405(g), Michael Riley D. ("Plaintiff") seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 423. For the reasons set forth below, the Commissioner's decision is affirmed.

## <span style="font-variant: small-caps;">Procedural History</span>

Plaintiff applied for DIB on October 18, 2018 (Tr. 204) and SSI on November 2, 2018 (Tr. 208), alleging a disability onset date of March 31, 2018 (Tr. 204, 208). Plaintiff's claims proceeded to a hearing before Administrative Law Judge ("ALJ") Michael Scurry, who issued an unfavorable decision on February 6, 2020 (Tr. 12-27). Plaintiff exhausted his administrative remedies and filed a timely complaint in this Court on September 8, 2020, seeking judicial review of the ALJ's decision (Doc. 1).

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c).

## APPLICABLE LEGAL STANDARDS

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes and regulations.[3] Under the Social Security Act, a person is disabled if they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382 and 1382c(a)(3)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step sequential analysis and considers whether: "(1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity ("RFC") leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citation omitted).

It is important to recognize that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, of the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). "[W]e will reverse only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (citation and internal quotation marks omitted). The Court's review "is limited also to the ALJ's rationales;" the Court will "not uphold an ALJ's decision by giving it different ground to stand upon." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

## THE EVIDENTIARY RECORD

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

### 1. *Agency Forms*

Plaintiff's Disability Report states he is very mentally delayed, has an estimated mental capacity of a ten-year-old, and can barely read and write (Tr. 237, 240). Plaintiff

worked as a janitor from January 2003 to January 2005 and as a janitor and car detailer from January 2005 to January 2018 (Tr. 241). Plaintiff's Work History Report states he worked at Vogler Motor Company ("Vogler") from the summer of 1998 to April 12, 2018 (Tr. 262). His job tasks included emptying trash, sweeping, mopping, cleaning toilets, wiping down the office, washing cars, vacuuming, and performing minor detailing (Tr. 263).

Plaintiff's Function Report states he lives alone at an apartment (Tr. 276). Plaintiff has always been referred to as "slow," struggled academically, and was placed in special education classes (*Id*.). He experienced extreme bullying and has "wounded" self-esteem (*Id*.). He has been diagnosed with anxiety and depression (*Id*.). Plaintiff's job at Vogler did not require social interactions and he had issues following directions due to memory problems (*Id*.). He was too intimidated to ask for help because of his self-esteem issues and a fear of being yelled at and fired (*Id*.).

On a typical day, Plaintiff showers, makes coffee, takes care of his basic hygiene, takes a walk, and watches television (Tr. 277). Plaintiff can prepare meals such as frozen pizzas and sandwiches (Tr. 278). He completes household chores such as laundry, dishes, taking out his trash, sweeping, and mopping (*Id*.). Plaintiff can drive and he grocery shops weekly (Tr. 279). His sister handles his financial accounts (*Id*.).

Plaintiff's hobbies include watching television, "psy fic," and playing games on his phone (Tr. 280). Plaintiff is a "loner" but can "chit-chat" with his neighbors for fifteen minutes each day (*Id*.). Plaintiff's learning disability impacts his ability to understand,

follow instructions, and get along with others (Tr. 281). He is "good" at following spoken instructions but can understand better with demonstrations (*Id.*).

Plaintiff has been terminated from a job because of his inability to follow instructions (Tr. 282). He felt ridiculed, "picked on," and belittled (*Id.*). He does not handle stress well at all and sometimes struggles with a change in routine (*Id.*).

Plaintiff's sister completed a Function Report, which states Plaintiff has an intellectual disability (Tr. 288). Plaintiff is unable to read forms and documents without help, he cannot spell words that he cannot read, he has very poor writing skills, and his sister helps him understand phone conversations (*Id.*). Plaintiff likes to look at magazines and newspapers, and he watches television shows (Tr. 289). He helps his neighbors with tasks when he can, such as moving furniture, taking out trash, and assisting with "outdoor work." (*Id.*). Obtaining jobs is difficult because of Plaintiff's limited reading and writing skills (*Id.*). Plaintiff has had "simple" jobs in the past but is unable to maintain them due to his inability to comprehend tasks (*Id.*). Plaintiff has depression and anxiety about his struggles to participate in basic life activities and being understood by others (*Id.*). Plaintiff needs reminders for oral health needs and often suffers because of his fear of navigating the healthcare system (Tr. 290). He has difficulty refilling medications (*Id.*). Plaintiff can open cans and packaged foods to prepare simple meals, but cannot read directions, labels, or recipes to prepare meals (*Id.*). Plaintiff can pay attention for ten to fifteen minutes and cannot follow detailed written instructions without help (Tr. 293). Plaintiff can follow "simple, minimal step instructions" (*Id.*). Plaintiff previously participated in a support program that assisted him with employment but the program

is no longer available and Plaintiff cannot complete basic job searches on his own (Tr. 295).

### 2. *Medical Records*

In May 2019, Plaintiff began treating with Robert Lowry, MSED, LCPC, LPHA and received an initial assessment (Tr. 540). Plaintiff reported a history of depression, little interest in doing things, feeling tired, difficulty with sleeping, trouble concentrating, feeling bad about himself, and feeling anxious (Tr. 542). On mental status exam, Plaintiff's judgment, memory, orientation, and cognition were within normal limits (Tr. 554). His mood was depressed and angry, his affect was sad, and his insight was fair (*Id.*). Mr. Lowry diagnosed Plaintiff with major depression, mild and generalized anxiety, based on Plaintiff's symptoms of little interest or pleasure, low self-esteem, low energy, sleep problems, excessive worrying, inability to calm his mind, feeling restless, difficulty focusing, and feeling uncomfortable around others (Tr. 564). Mr. Lowry recommended individual therapy, client center consultation, community support individual, case management, clinical assessment tool, and psychotropic medication monitoring and training (Tr. 564-65). Later that month, Plaintiff told Mr. Lowry he was not comfortable around others and isolated himself (Tr. 602). Plaintiff was tearful at times and discussed losing his brother at a young age (Tr. 600).

In June 2019, Plaintiff saw Mr. Lowry and appeared more positive in affect and mood (Tr. 605). Plaintiff told Mr. Lowry he worried about his future and he became upset and angry when discussing his past treatment from an employer (Tr. 607). In July 2019, Mr. Lowry noted Plaintiff seemed "down" and "more depressed" (Tr. 608). In August

2019, Plaintiff told Mr. Lowry about the death of his brother and other life experiences that had been difficult for him (Tr. 611). Plaintiff brought in an old resume of his work history, which "coincided with his depression" and discussed being bullied and experiencing difficulty with critical bosses, "who can be triggering for him" (Tr. 613). In September 2019, Plaintiff indicated to Mr. Lowry that he was in a relatively positive frame of mind (Tr. 615-17). In October 2019, Plaintiff described to Mr. Lowry how he "would get physically sick when he was working, due to being anxious and feeling like he was emotionally picked on and abused" (Tr. 618-19). Plaintiff stated he worried about the future (Tr. 619). He reported feeling less depression, overall (*Id.*). Later that month, Plaintiff told Mr. Lowry he had turned over "much of his dealings" to his sister and had an attitude of, "I don't care," and would leave a situation if he might become frustrated (Tr. 621).

In November 2019, Plaintiff told Mr. Lowry he had some depression and isolation and was concerned about health testing for his disability determination (Tr. 622). Later that month, Plaintiff discussed with Mr. Lowry that he worked for 20 years under difficult circumstances where he felt criticized and abused (Tr. 625). He described being bullied in school, which contributed to him developing depression and anxiety (*Id.*).

On November 4, 2019, Mr. Lowry reassessed Plaintiff (Tr. 549). On mental status exam, Plaintiff's judgment, memory, affect, orientation, and cognition were within normal limits (Tr. 559). His mood was depressed, angry, and anxious, and his insight was fair (*Id.*). Mr. Lowry diagnosed Plaintiff with major depression, mild and generalized

anxiety (Tr. 569). He recommended individual therapy, client centered consultation, community support individual, case management, and clinical assessment tool (Tr. 570).

### 3. *Evidentiary Hearing*

On January 16, 2020, ALJ Scurry presided over an evidentiary hearing, at which Plaintiff was represented by counsel (Tr. 36). Plaintiff testified he was 59 years old and lived alone in a housing unit (Tr. 41-42). Plaintiff previously worked at Vogler for twenty years, where he detailed cars, which entailed cleaning carpets, wiping down windows and door jams, washing the car, and driving the car to the parking lot for the customer to pick up (Tr. 43-44). Plaintiff was fired from Vogler (Tr. 44). Plaintiff had not submitted any job applications since he was fired (Tr. 44-45). Plaintiff has been living off of a Link card and assistance from his mother and sister (Tr. 45-46). On one occasion, Plaintiff helped someone cut copper out of a church and he received payment for his work (Tr. 46). When the ALJ asked Plaintiff what kept him from working, Plaintiff responded, "People criticizing me for…my mistakes" and "sometimes I make mistakes" (*Id*.). The day Plaintiff was fired was the first day he had problems with being criticized (Tr. 47-48). Plaintiff was criticized for missing tasks and forgetting to do other tasks (Tr. 49).

Plaintiff's sister, Trudy, testified at the hearing (Tr. 54). Trudy testified Plaintiff was assigned a job coach after high school, who acted as a liaison between Plaintiff and his employers (Tr. 58). Plaintiff had problems holding jobs because he had difficulty following directions (Tr. 58). Trudy believes Plaintiff was able to keep his job at Vogler for so long because the owner "took him under his wing" (*Id*.). However, the owner passed away and Plaintiff was eventually fired (*Id*.). When Plaintiff receives something

in the mail, he calls Trudy and spells words to her and she helps him understand the document (Tr. 59).

Vocational Expert ("VE") Mark Anderson testified at the hearing. The ALJ asked the VE to consider a person with Plaintiff's age, education, and work experience who has the residual functional capacity ("RFC") to perform medium work and could occasionally climb ladders, ropes, and scaffolds; understand, remember, and apply information for unskilled, simple, repetitive tasks; could concentrate, persist, and maintain pace for such tasks in a routine setting; and could interact with others occasionally (Tr. 63). The VE testified Plaintiff's past work would be available (Tr. 64). Next, the ALJ asked the VE to consider an individual with Plaintiff's age, education, and work experience who has the limitations described in the first hypothetical but was further limited in not being able to tolerate routine, interpersonal demands, and the routine changes involved with unskilled work on a consistent basis eight hours a day, five days a week (*Id.*). The VE stated Plaintiff's past work would not be available and no other jobs exist in the national economy that such an individual could perform (*Id.*).

### 4. *Medical Opinions*

#### a.  **Dollean York-Anderson, Ph.D.**

On November 13, 2018, Plaintiff underwent a psychological consultation from Dollean York-Anderson, Ph.D. (Tr. 335-37). Plaintiff was referred to Dr. York-Anderson to determine his eligibility for disability benefits (Tr. 335). Plaintiff was neatly and casually dressed and there were no noted problems with his hygiene (*Id.*). Plaintiff was cooperative throughout his evaluation (*Id.*). He maintained good eye contact (*Id.*).

Plaintiff reported he was diagnosed with depression and had low self-esteem (*Id.*). He felt sadness on most days and got "down in the dumps" (*Id.*). Plaintiff described himself as a "loner" (*Id.*). He stated it was difficult for him to take criticism from others and felt badly about himself when he tried his best but it was not good enough (*Id.*). Plaintiff reported he was a slow learner and could barely read (*Id.*). He required assistance in understanding complex written materials and could not pronounce or spell "big words" (*Id.*). Plaintiff was not taking any prescription medications (*Id.*).

Plaintiff reported he worked watering plants until the business closed and worked at a car dealership cleaning automobiles for twenty years (Tr. 336). He was fired and his "supervisor constantly yelled at [him]" (*Id.*). The position was very stressful and reminded him of being bullied at school (*Id.*). Plaintiff reported he had been depressed since school and had difficulty "being yelled at" and "being constantly criticized, especially when [he has] done the best that [he can" (*Id.*). He had low motivation and energy (*Id.*). Plaintiff denied a psychiatric treatment history (*Id.*). Plaintiff lived in a low-income housing facility with individuals with disabilities (*Id.*). He washed dishes, cooks, and did laundry (*Id.*). Plaintiff reported he had difficulty reading and understanding and needed someone to explain things to him (*Id.*).

On mental status exam, Plaintiff was cooperative and friendly and his responses were coherent, logical, and goal directed (Tr. 336). Plaintiff's general mood appeared depressed, his speech was clear, and his volume was appropriate (*Id.*). His rate of speech was normal and no delusional thought processes were evident (*Id.*). Plaintiff's thought content was appropriate to mood and circumstances and he was oriented in all spheres

(*Id.*). His recent memory, remote memory, and immediate memory were good (*Id.*). He repeated three of three words after a five-minute interval and repeated five digits forward and two digits backwards (*Id.*). Plaintiff was unable to spell a five-letter word forward and backwards (*Id.*). He was unable to accurately calculate serial seven subtractions or accurately calculate orally presented word problems for addition, subtraction, multiplication, and division (*Id.*). Plaintiff named five presidents and large cities (Tr. 337. He explained a bush and a tree were alike "because they have leaves" and differ in "height" (*Id.*). Plaintiff stated an apple and an orange are alike because "they are fruit" and differ in "color" (*Id.*). Plaintiff was unable to interpret any proverbs and would "tell the manager" if he saw smoke and fire in a theater (*Id.*). If he found a sealed, stamped, and addressed envelope, he would "take it to the police" (*Id.*).

Dr. York-Anderson's diagnostic impression was persistent depressive disorder, early onset, with pure dysthymic syndrome, mild (*Id.*). Dr. York-Anderson concluded Plaintiff "may need assistance in the management of his own funds, if so assigned" and "[c]ounseling is strongly recommended" (*Id.*).

### b.  Adrian Feinerman, MD

On January 16, 2019, Dr. Adrian Feinerman completed a consultative examination of Plaintiff to provide information to the Bureau of Disability Determination Services (Tr. 356). Plaintiff's hygiene was adequate and his attire and behavior were appropriate (Tr. 360). Plaintiff was oriented to person, place, and time, and his appearance, behavior, memory, concentration, and ability to relate were normal (Tr. 361).

c. **James Peterson, Ph.D.**

On May 17, 2019, Dr. James Peterson conducted a mental status exam and WAIS-IV (Tr. 378). Plaintiff was "rather eccentric" and spoke in an "overly loud voice" (Tr. 379). He was pleasant and cooperative and made adequate eye contact (*Id.*). Plaintiff was unsure about the month but knew it was the 15th because of his appointment (*Id.*). He knew it was 2019 (*Id.*). Plaintiff did not accurately estimate the distance to a neighboring town but he knew he lived in Southern Illinois (*Id.*). Plaintiff was able to add, subtract, and multiply single digit numbers but did not know how to divide (*Id.*). Plaintiff said an apple and an orange were fruit but different colors; he was able to cite activities from the pervious day; he was able to name five large cities; and he stated that if he found a stamped, sealed, and addressed envelope, he would mail it (*Id.*). Plaintiff interpreted the saying, "We'll cross that bridge when we come to it" as "talk later" (*Id.*). Plaintiff's sleep and appetite were "50-50" but sometimes he did not eat all day (*Id.*).

Plaintiff's WAIS-IV results were as follows:

Full Scale IQ: 74 (4th Percentile)

Verbal Comprehension: 76 (5th Percentile)

Perceptual Reasoning: 81 (10th Percentile)

Working Memory: 83 (13th Percentile)

Processing Speed: 76 (5th Percentile)

Block Design: 7

Similarities: 5

Digit Span: 7

Matrix Reasoning: 5

Vocabulary: 5

Arithmetic: 7

Symbol Search: 5

Information: 7

Coding: 6

Picture Completion: 8

(Tr. 380).

Dr. Peterson found the results of the WAIS-IV yielded an IQ that placed Plaintiff in the Borderline range of intellectual functioning (*Id.*). There were no statistically significant differences between the subscales, although he did best in Perceptual Reasoning, consisting of Coding and Symbol Search, which do not require a fund of knowledge or language skills (*Id.*). The test results were considered valid (*Id.*).

Dr. Peterson found Plaintiff had borderline intellectual functioning and adjustment disorder with anxiety and depressed mood (Tr. 380). Plaintiff "functions at a low intellectual level but maintains adequately" (*Id.*). Plaintiff appeared isolated and said he was depressed and lonely, citing stress from his job at the auto dealership where he felt humiliated (*Id.*). Dr. Peterson opined Plaintiff could manage his funds independently (Tr. 381).

### d.  State Agency Consultant Opinions

On January 3, 2019, state agency consultant M.W. DiFonso, Psy. D., conducted a records review and found Plaintiff has the severe impairment of depressive, bipolar and

related disorders (Tr. 72). Plaintiff had a mild limitation with understanding, remembering, or applying information; a moderate limitation with interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and a mild limitation with adapting or managing oneself (*Id.*). Plaintiff was not significantly limited in remembering locations and work-like procedures, not significantly limited in understanding and remembering very short and simple instructions, and moderately limited in understanding and remembering detailed instructions (Tr. 76). Plaintiff had limitations with sustaining concentration and persistence (*Id.*). He was not significantly limited in carrying out very short and simple instructions; moderately limited in carrying out detailed instructions; moderately limited in maintaining attention and concentration for extended periods; not significantly limited in performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; not significantly limited in sustaining an ordinary routine without special supervision; not significantly limited in working in coordination with or in proximity to others without being distracted by them; not significantly limited in making simple work-related decisions; and not significantly limited in completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods (*Id.*). Plaintiff was moderately limited with interacting appropriately with the general public; not significantly limited in asking simple questions or requesting assistance; moderately limited with accepting instructions and responding appropriately to criticism from supervisors; not significantly limited in getting along with coworkers or peers without

distracting them or exhibiting behavioral extremes; and not significantly limited in maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness (Tr. 77).

In the narrative portion of the Mental RFC Assessment ("MRFCA"), Dr. DiFonso cited Dr. Anderson's mental status exam to explain Plaintiff's cognitive and attentional skills were intact and adequate for simple one-two step as well as multiple step tasks (Tr. 77). Dr. DiFonso noted Plaintiff performed reasonably well on cognitive tasks on a mental status exam (*Id.*). He stated Plaintiff "describes self as somewhat social avoidant. Recommend moderate limitation of social expectations" (*Id.*). Dr. DiFonso concluded Plaintiff was capable of multi-step productive activity with modified social demand and was moderately limited in carrying out detailed tasks (*Id.*).

On May 23, 2019, Steven Fritz, Psy. D., completed an MRFCA, where he found Plaintiff was not significantly limited with remembering locations and work-like procedures; not significantly limited with understanding and remembering very short and simple instructions; and moderately limited with understanding and remembering detailed instructions (Tr. 107). Plaintiff was not significantly limited with carrying out very short and simple instructions; moderately limited with carrying out detailed instructions; moderately limited with maintaining attention and concentration for extended periods; not significantly limited with performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; not significantly limited with sustaining and ordinary routine without special supervision; not significantly limited with working in coordination with or in proximity to others

without being distracted by them; not significantly limited with making simple work-related decisions; and not significantly limited with completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods (Tr. 107-08). Plaintiff was moderately limited in interacting appropriately with the general public; not significantly limited with asking simple questions or requesting assistance; moderately limited with accepting instructions and responding appropriately to criticism from supervisors; not significantly limited with getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; and not significantly limited with maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness (Tr. 108).

Dr. Fritz cited Dr. York-Anderson mental status exam to explain Plaintiff's cognitive and attentional skills were intact and adequate for simple one-two step as well as multiple step tasks (Tr. 108). Dr. Fritz sated Plaintiff performed reasonably well on cognitive tasks on mental status exam (*Id.*). He noted Plaintiff's self-descriptions as "socially avoidant" warranted "moderate limitation of social expectation" (Tr. 109). Dr. Ftiz concluded Plaintiff was "capable of multi-step productive activity w[ith] modified social demand" and is moderately limited in carrying out detailed tasks (*Id.*).

## THE ALJ'S DECISION

ALJ Scurry found Plaintiff met the insured status requirements through December 31, 2023 and had not engaged in substantial gainful activity since the alleged onset date of March 31, 2018 (Tr. 14). Plaintiff has the following severe impairments: borderline

intellectual functioning, adjustment disorder with anxiety and depressed mood, depressive disorder, and left knee osteoarthritis (*Id.*). ALJ Scurry determine Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments (Tr. 15). The ALJ found Plaintiff has a moderate limitation with regard to concentrating, persisting or maintaining pace (Tr. 16). The ALJ determined Plaintiff has the RFC to perform medium work with certain exceptions and to "understand, remember, and apply information for unskilled, simple, repetitive, tasks, can concentrate, persist, and maintain pace for such tasks in a routine setting, and can interact with others occasionally" (Tr. 19). ALJ Scurry stated:

> The State agency psychological reviewing consultant found the claimant had severe mental impairments that caused mild to moderate deficits (1A; 2A; 5A; 6A). As such, the administrative findings of the State agency psychologists were consistent with the overall record including the mental status examinations. The assessments of the State agency psychological consultants captured the gist of this case and were persuasive with respect to the deficits consistent with the claimant's borderline intellectual functioning, depression, and anxiety. These mental health professionals also viewed records from multiple sources. The claimant's diagnosed mental impairment reasonably resulted in mild to moderate levels of interference that affected his ability to complete detailed work and interact socially, as supported by his mental status examinations, treatment history, and reported activities. As such, this opinion was consistent with the evidence. As such, this opinion was persuasive.

(Tr. 25-26).

## ISSUES RAISED BY PLAINTIFF

Plaintiff argues the ALJ (1) failed to adequately capture Plaintiff's moderate limitation in concentration, persistence, or pace in the RFC assessment and (2) failed to consider Plaintiff's work history in the disability determination.

<u>ANALYSIS</u>

Plaintiff argues the ALJ erred by not adequately accounting for Plaintiff's moderate limitation in concentration, persistence, or pace ("CPP") when determining the Plaintiff's RFC. As a general rule, both the RFC assessment and the hypothetical posed to the vocational expert "must incorporate all of the claimant's limitations supported by the medical record," including deficiencies in CPP. *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (quoting *Crump v. Saul,* 932 F.3d 567, 570 (7th Cir. 2019)). Generally, an ALJ cannot account for limitations in CPP by restricting a claimant to "simple, routine tasks and limited interactions with others" or "unskilled work." *Lothridge*, 984 F.3d at 1233; *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020); *Crump,* 932 F.3d at 570 (citing *Winstead v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019)); *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015) (quoting *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)). "[S]omeone with problems concentrating might not be able to complete a task consistently over the course of a workday, no matter how simple it may be." *Lothridge*, 984 F.3d at 1233 (quoting *Martin*, 950 F.3d at 373–74). *Accord Crump*, 932 F.3d at 570 ("[O]bserving that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift."); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) ("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity.").

Similarly, in presenting hypothetical scenarios, the ALJ must ensure that the vocational expert is "orient[ed] . . . to the totality of a claimant's limitations." *Moreno v.*

*Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (quoting *O'Connor-Spinner*, 627 F.3d at 619); *Crump*, 932 F.3d at 570. "Again and again," the Seventh Circuit has "said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019). The best way to do that is to include the specific limitations in the hypothetical. *Crump*, 932 F.3d at 570; *Moreno*, 882 F.3d at 730; *O'Connor*, 627 F.3d at 620–21 ("[F]or most cases, the ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do.")

None of that is to say a limitation to unskilled work or simple tasks can *never* adequately account for moderate limitations in concentration, persistence and pace. *Lothridge*, 984 F.3d at 1234; *Milliken v. Astrue*, 397 Fed. Appx. 218, 221 (7th Cir. 2010). And the Seventh Circuit has not insisted on a per se requirement that this specific terminology—"concentration, persistence and pace"—be used in the hypothetical in all cases. *O'Connor-Spinner*, 627 F.3d at 619. *See also Lothridge*, 984 F.3d at 1233 ("The ALJ need not use any 'magic words' in formulating a person's residual functional capacity . . . .") (citation omitted); *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019) ("An ALJ need not use 'specific terminology . . . .'") (citation omitted); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002). The question for the Court is whether the ALJ "account[ed] for the totality of a claimant's limitations" in formulating the RFC and posing hypothetical questions to the ALJ. *Martin*, 950 F.3d at

374 (citing *Moreno*, 882 F.3d at 730); *see also Lothridge*, 984 F.3d at 1233; *O'Connor-Spinner*, 627 F.3d at 619 ("Our cases generally have required the ALJ to orient the VE to the totality of a claimant's limitations."); *Steele*, 290 F.3d at 942 ("Hypothetical questions posed to vocational experts ordinarily must include *all* limitations supported by medical evidence in the record.") (emphasis in original).

Importantly, the ALJ is allowed to "reasonably rely upon the opinion of a medical expert who translates . . . findings [of moderate difficulties in sustaining concentration, persistence, or pace] into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *accord Pavlicek v. Saul*, 994 F.3d 777, 784 (7th Cir. 2021).

Here, the ALJ determined that Plaintiff's impairments cause a moderate limitation in concentrating, persisting, or maintaining pace (Tr. 16). In reaching this determination, the ALJ noted Plaintiff's reports that he experienced knee pain that interfered with his sleep, felt sadness on most days, had low energy, motivation, and self-esteem, and found it difficult to take criticism from others (Tr. 16). The ALJ continued on to determine Plaintiff has the RFC to "understand, remember, and apply information for unskilled, simple, repetitive, tasks, can concentrate, persist, and maintain pace for such tasks in a routine setting, and can interact with others occasionally" (Tr. 19). In reaching the RFC determination, the ALJ relied on state agency consultants who opined Plaintiff has moderate difficulty completing detailed work; concentrating, persisting, and maintaining pace; and interacting socially (Tr. 25-26).

Plaintiff argues the ALJ erroneously equated his moderate limitation in CPP with an ability to concentrate, persist, and maintain pace to perform simple, repetitive tasks.[4] In response, the Commissioner argues the ALJ properly relied on the state agency consultants, who translated Plaintiff's moderate limitation in CPP into a narrative functional capacity in the Mental RFC Assessment ("MRFCA").

The MRFCA contains two relevant portions, traditionally referred to as the "checklist" portion and the "narrative" portion. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021). In the checklist portion, the MRFCA lists a series of questions that address the claimant's ability to perform various work activities, and the reviewing psychologist indicates whether the claimant is "not significantly limited," "moderately limited," or "markedly limited" in the functional area. SSA POMS DI 24510.063. "Not significantly limited" means "the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity." *Id.* "Moderately limited" means "the individual's capacity to perform the activity is impaired." *Id.* When the activity is rated "moderately limited," the psychologist must describe the "degree and extent of the capacity or limitation" in "narrative format." *Id.*

The Seventh Circuit has determined that "an ALJ may rely on a doctor's narrative RFC" when "that narrative adequately encapsulates and translates" the checklist

---

[4] Plaintiff suggests the ALJ inconsistently found Plaintiff had a moderate limitation in CPP but then determined Plaintiff had an RFC in which he "can concentrate, persist, and maintain pace." However, the ALJ found Plaintiff can "concentrate, persist, and maintain pace" with respect to "unskilled, simple, repetitive, tasks." (Tr. 19). The ALJ's RFC determination states, verbatim, "The individual can understand, remember, and apply information for **unskilled, simple, repetitive, tasks**, can concentrate, persist, and maintain pace **for such tasks** in a routine setting, and can interact with others occasionally." (*Id.*) (emphasis added).

observations. *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). Recently, in *Pavlicek*, the Seventh Circuit reiterated that an ALJ may rely on a consultant's narrative assessment if it is consistent with the checklist ratings. 994 F.3d at 783.

Here, the state agency consultants indicated Plaintiff is "not significantly limited" in "[t]he ability to carry out very short and simple instructions," "[t]he ability to understand and remember very short and simple instructions," "[t]he ability to sustain an ordinary routine without special supervision," and "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 76, 107). However, the consultants found Plaintiff is "moderately limited" in "[t]he ability to carry out detailed instructions," "[t]he ability to understand and remember detailed instructions," and "maintain attention and concentration for extended periods" (Tr. 76, 107). The consultants explained Plaintiff's moderate rating in CPP in the narrative portion of the MRFCA, when they stated Plaintiff's mental status exam indicated his "cognitive and attentional skills are intact and adequate for simple one-two step as well as multiple step tasks" and he is "capable of multi-step productive activity w[ith] modified social demand" (Tr. 77, 109). The consultants noted Plaintiff is "moderately limit[ed]" with his "ability to carry out detailed tasks" (*Id.*).

Relying on these MRFCA forms, the ALJ found Plaintiff can "understand, remember, and apply information for unskilled, simple, repetitive, tasks, can concentrate, persist, and maintain pace for such tasks in a routine setting, and can interact with others occasionally" (Tr. 19). The ALJ incorporated this RFC in a hypothetical to the VE, who

testified that a person with the limitations described could perform Plaintiff's past work (Tr. 63-64).

The ALJ's determination that Plaintiff can perform "simple, repetitive, tasks" is consistent with the state agency consultants' opinions that Plaintiff is "not significantly limited," in the ability to understand, remember, and carry out very short and simple instructions, meaning "the effects of the mental disorder do not prevent the individual from consistently and usefully performing the activity." POMS DI 24510.063. Further, the ALJ's determination that Plaintiff had the concentration, persistence, and pace to perform simple, repetitive tasks in an environment with only occasional interaction with others is consistent with the consultants' narrative assessment that Plaintiff had the cognitive and attentional skills to perform one-two step and multiple-step tasks and could maintain productive activity with modified social demands. In sum, the RFC in this case includes all of the findings in both the checklist portion and the narrative portion of the state agency consultants' MRFCAs. The ALJ did not err in relying on the consultants' narrative opinions, which adequately encapsulate and translate the checklist portion of the MRFCAs. *See Pavlicek*, 994 F.3d at 783.

Next, Plaintiff argues the ALJ erred because he did not consider the evidence involving Plaintiff's lengthy work history at Vogler. "[A] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability." *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015). However, "[a]n ALJ is not statutorily required to consider a claimant's work history[.]" *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016). Work history is just one factor among many and is not dispositive to

the credibility determination. *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017). Ultimately, "the ALJ's credibility finding" is entitled to "special deference" and will be overturned "only if it is patently wrong." *Id.* at 528.

Here, Plaintiff contends the ALJ did not consider his work history at all. However, the ALJ noted on several occasions that Plaintiff worked at the Vogler Ford Body Shop for 20 years. *See* Tr. 19 ("he reported he had worked at the Vogler Ford Body Shop detailing cars for 20 years before he was fired"); Tr. 20 (summarizing testimony from Plaintiff's sister that a job coach "helped him get the job he had for 20 years"); Tr. 21 ("He reported that he cleaned automobiles at the car dealership for 20 years, fulltime"). The ALJ went on to provide detailed summaries of testimony from Plaintiff and his sister concerning Plaintiff's limitations (Tr. 19-21). However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. 21).

Plaintiff does not explain how the ALJ was patently wrong in his conclusion that Plaintiff's statements about his limitations were not entirely consistent with the other evidence. To the extent Plaintiff argues the ALJ should have provided an explicit analysis concerning Plaintiff's work history, the Seventh Circuit has found that ALJs "need not provide a complete written evaluation of every piece of evidence." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013); *see also Summers*, 864 F.3d at 528 ("The ALJ did not commit reversible error by failing to explicitly discuss [the plaintiff's] work history when evaluating her credibility."). An ALJ is not obligated to believe all of a claimant's

testimony concerning his impairments. *See Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). The Court affords significant deference to an ALJ's credibility determination and, here, nothing indicates the ALJ's determination was patently wrong.

C O N C L U S I O N

For the reasons explained above, the Commissioner's final decision denying Plaintiff's application for social security disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATE: March 31, 2022**

<u>s/ Mark A. Beatty</u>
**MARK A. BEATTY**
**United States Magistrate Judge**